UNITED STATES DISTRICT COURT

IN THE WESTERN DISTRICT OF MICHIGAN

BENJAMIN STANLEY,

    Plaintiff,

v.

WESTERN MICHIGAN UNIVERSITY,
KATIE DECAMP, individually and in her
professional capacity; WARREN HILLS,
individually and in his professional capacity;
UNKNOWN JOHN DOE AND JANE DOE
EMPLOYEES OF WESTERN MICHIGAN
UNIVERSITY, in their individual and
professional capacities.

    Defendants.

Case No. 1:23-cv-00206
Hon.

_____

Eric D. Delaporte (P69673)
DELAPORTE LAW, PLLC
Attorney for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 643-2626

_____

# COMPLAINT

NOW COMES Plaintiff Benjamin Stanley (hereinafter "Mr. Stanley" or "Plaintiff"), by and through his attorney Eric Delaporte of Delaporte Law, PLLC, and files his Complaint against Defendants Western Michigan University (hereinafter "WMU"), Ms. Katie DeCamp, Mr. Warren Hills, and unknown John Doe and Jane Doe employees at WMU for violations of the Americans with Disabilities Act (ADA), the Michigan Persons with Disabilities Civil Rights Act ("PDCRA") and for intentional infliction of emotional distress:

1

## GENERAL ALLEGATIONS

### JURISDICTION AND VENUE

1. This Complaint is brought under 42 U.S.C. §§ 12101, 12203, MCL 37.1602 for employment discrimination, retaliation, and Michigan common law for intentional infliction of emotional distress that occurred within the boundaries of this Honorable Court's jurisdiction.

2. Defendant WMU is a public university located in Kalamazoo, Michigan.

3. Plaintiff is a Kalamazoo resident who uses a service dog to aid in his disability.

4. Plaintiff received a "Right to Sue" notice from the U.S. Department of Justice on November 29, 2022 authorizing him to pursue his Complaint against WMU. [Exhibit A].

5. Jurisdiction based on federal question is proper pursuant to 28 U.S.C. §§ 1331 and 1343.

6. This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims arising under statutory and common law pursuant to 28 U.S.C. § 1367.

7. Venue based on a substantial part of the events giving rise to the claim having occurred in this district is proper pursuant to 28 U.S.C. § 1391.

### COMMON FACTS

8. Plaintiff incorporates the previous paragraphs as if contained herein.

9. In early September, 2020, WMU hired Mr. Benjamin Stanley as a utility food worker.

10. Mr. Stanley started his employment as a utility food worker at WMU in early October, 2020.

11. Mr. Stanley began training on his first day. Partway through the training, the employee leading the training was called away for another task and did not complete Mr. Stanley's training.

12. Mr. Stanley was subsequently disciplined for being late after having to wait for WMU staff to perform his required temperature check for COVID-19 purposes; based on information and belief, other staff were not similarly disciplined.

13. Mr. Stanley was told that he would not be disciplined or counted late when forced to wait for WMU staff to arrive and provide COVID-19 screenings.

14. Despite WMU's representations, Mr. Stanley was unfairly disciplined.

15. Mr. Stanley, largely as a result of his ADHD disability, occasionally forgot his swiping ID to timely clock in.

16. When Mr. Stanley made a request for a reasonable accommodation (such as a punch card kept on site) to avoid being unjustly disciplined, his reasonable accommodation was denied.

17. Mr. Stanley also spoke to the Office of Institutional Equity at WMU about whether he may use his service dog in dining services or any other department.

18. The Office of Institutional Equity responded by asking improper questions regarding Mr. Stanley's disability and requesting Mr. Stanley further provide invasive medical information regarding his disability.

19. While Mr. Stanley disclosed the tasks his service dog performs, he declined to elaborate on the nature of his disability and his medical history beyond that required by the ADA and PDCRA.

20. Prior to Mr. Stanley requesting a reasonable accommodation for clocking in, and despite Mr. Stanley's lateness for either forgetting his swipe ID or being delayed by WMU staff, Mr. Stanley was told that he was doing a fine job and was on track to complete his probationary period.

21. After he requested a reasonable accommodation for clocking in, WMU's praise changed. On or around November 10, 2020, Mr. Stanley was asked to sit down for a conversation, in which WMU told him he had to stop being "late."

22. However, Mr. Stanley's lateness was due to his missing swipe card and COVID-19 policies, and WMU did not provide a reasonable accommodation to address Mr. Stanley's disability, making it impossible for him to comply with the standards established for nondisabled employees. WMU instructed him to stop being "late" without providing a reasonable accommodation to address his disability and after being the cause of his lateness due to the COVID-19 screenings.

23. Ms. Katie DeCamp, head supervisor of dining services at the time, also insisted Mr. Stanley was told during his training that he could use the speaker at the entrance to request someone open the door for him, in order to prevent tardiness after COVID-19 screenings. Ms. DeCamp lied about informing Mr. Stanley about the speaker during training. Mr. Stanley was never told about this speaker button, otherwise, he would have used it to avoid being late.

24. It was on November 10, 2020 when Mr. Stanley made a request for more reasonable accommodations that he was informed that the hospitality department "doesn't do" accommodations.

25. Mr. Stanley then sought out the help of the Human Resources ("H.R.") Department.

26. H.R. refused to help and directed Mr. Stanley to call other departments.

27. None of Mr. Stanley's attempts to make a request for a reasonable accommodation were approved.

28. The day after Mr. Stanley made these numerous attempts to request reasonable accommodations for his disabilities, he was terminated.

29. He was terminated on that day, despite having been on time, and escorted out of the building.

30. Mr. Stanley then attempted to speak to H.R. Vice President, Mr. Warren Hills, about what he perceived to be retaliation and discrimination.

31. Mr. Stanley again approached Paul Choker in dining services at WMU in August of 2021 to discuss his termination.

32. He again tried to speak to Mr. Warren Hills in the H.R. Department. Almost immediately after their conversation, Public Safety called Mr. Stanley and informed him that he was no longer able to enter campus, and that any entrance on campus would be trespassing.

### COUNT 1: Discrimination under the ADA

33. Plaintiff incorporates the previous paragraphs as if contained herein.

34. Under 42 U.S.C. § 12112, an employer shall not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

35. Mr. Stanley made requests for accommodations related to his disability.

36. WMU discriminated against Mr. Stanley by making unlawful inquiries regarding his disability.

37. WMU discriminated against Mr. Stanley by failing to accommodate his reasonable request for an alternative method for clocking in and because he sought the use of a service animal.

## COUNT 2: Retaliation and Intimidation under the ADA and PDCRA

38. Plaintiff incorporates the previous paragraphs as if contained herein.

39. Under 42 U.S.C. § 12203 and MCL 37.1602, no person shall discriminate against another individual because that individual opposed a practice made unlawful under either act.

40. WMU retaliated against Mr. Stanley by firing him for simply exercising his rights under the ADA and PDCRA when making reasonable request for an accommodation based in alternative method for clocking in and for the use of his service animal.

## COUNT 3: Intentional Infliction of Emotional Distress

41. Plaintiff incorporates the previous paragraphs as if contained herein.

42. WMU, or those acting on behalf of, or conspiring with WMU, and referred to herein, engaged in retaliatory conduct towards Plaintiff, including, but not limited to, intentionally firing Mr. Stanley based on a reasonable request for accommodations.

43. Defendants conduct was intentional.

44. The conduct was the cause of Mr. Stanley's complaint; and

45. Defendants conduct caused Mr. Stanley severe emotional distress.

WHEREFORE, Plaintiff, Benjamin Stanley, prays that this Honorable Court order the following:

46. Award Mr. Stanley actual and compensatory damages;

47. Award Mr. Stanley punitive damages;

48. Award Mr. Stanley his attorney fees and costs;

49. Award Mr. Stanley whatever other legal or equitable remedies this Honorable Court deems reasonable and just pursuant to statute and common law.

50. Provide any other relief the Court deems fit.

DATED: February 27, 2023

                                                DELAPORTE LAW, PLLC

                                                By: _/s/ Eric Delaporte_____
                                                     Eric D. Delaporte (P69673)
                                                     210 State St., Suite B
                                                     Mason, MI 48854
                                                     (517) 643-2626
                                                     Eric@DelaporteLaw.com

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Benjamin Stanley requests that this count and all previous paragraphs incorporated herein be tried by a jury.

DATED: February 27, 2023

                                                  DELAPORTE LAW, PLLC

                                                  By: _____
                                                      Eric D. Delaporte (P69673)
                                                      210 State St., Suite B
                                                      Mason, MI 48854
                                                      (517) 643-2626
                                                      Eric@DelaporteLaw.com