**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: June 24, 2024

Mr. Eric Delaporte
Delaporte Lynch
210 State Street, Suite B
Mason, MI 48854

Mr. Joseph E. Richotte
Mr. Daniel B. Tukel
Butzel Long
201 W. Big Beaver Road, Suite 1200
Troy, MI 48084

          Re:  Case No. 23-1808, *Benjamin Stanley v. Western Michigan University, et al*
               Originating Case No. : 1:23-cv-00206

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                    Yours very truly,

                                    Kelly L. Stephens, Clerk

                                    Cathryn Lovely
                                    Deputy Clerk

cc:  Ms. Ann E. Filkins

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0136p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

BENJAMIN STANLEY,

    *Plaintiff-Appellant*,

    *v.*

WESTERN MICHIGAN UNIVERSITY; WARREN HILLS and KATIE DECAMP, individually and in their professional capacities,

    *Defendants-Appellees*.

No. 23-1808

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:23-cv-00206—Jane M. Beckering, District Judge.

Decided and Filed:  June 24, 2024

Before:  CLAY, THAPAR, and MATHIS, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:**  Eric Delaporte, DELAPORTE LYNCH, PLLC, Mason, Michigan, for Appellant. Daniel B. Tukel, Joseph E. Richotte, BUTZEL LONG, P.C., Troy, Michigan, for Appellees.

---

**OPINION**

---

    MATHIS, Circuit Judge.  Benjamin Stanley worked for Western Michigan University ("WMU") for about one month when WMU terminated his employment.  Stanley then sued WMU and a few of its employees.  He claimed that WMU and certain supervisors discriminated and retaliated against in violation of the Americans with Disabilities Act ("ADA").  Stanley also brought a claim under Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"),

as well as a claim for intentional infliction of emotional distress.  The district court dismissed Stanley's federal claims for lack of subject-matter jurisdiction based on Eleventh Amendment immunity and dismissed his state-law claims for failure to comply with the Michigan Court of Claims Act's notification statute.  *See* Mich. Comp. Laws § 600.6431.  The district court also denied leave for Stanley to amend his complaint.  We affirm the district court's dismissal of Stanley's federal claims and the denial of Stanley's motion for leave to amend his complaint, but we vacate the judgment in part and remand to the district court to dismiss Stanley's federal and state-law claims without prejudice.

## I.

WMU is a public university in Michigan.  WMU employed Benjamin Stanley as a utility food worker in its dining hall for 31 days, from early October to mid-November 2020.  Stanley claims he did not complete training for the job because "[p]artway through the training, the employee leading the training was called away for another task." R. 1, PageID 2.

WMU terminated Stanley's employment during his probationary period for excessive tardiness and failure to follow proper clocking-in procedures.  Stanley has severe ADHD that he claims impacted his ability to timely clock in, such as by causing him to occasionally forget his swiping ID card.  Stanley claims he was "disciplined for being late after having to wait for WMU staff to perform his required temperature check for COVID-19 purposes," even though he was told he would not be disciplined following such occurrences.  *Id.* at 3.  Because Stanley sometimes forgot his ID card, he requested a reasonable accommodation—such as a punch card to be kept onsite—which WMU denied.  Stanley also spoke to WMU's office of institutional equity to determine whether he would be able to use his service dog in any department, including dining services, which Stanley claims led to employees in that office "asking improper questions regarding [his] disability." *Id.*  Stanley disclosed the tasks his service dog performed but did not elaborate on his disability or medical history.

Before Stanley requested a reasonable accommodation, he was "told that he was doing a fine job and was on track to complete his probationary period." *Id.*  However, "WMU's praise changed" when, on or about November 10, 2020, WMU told Stanley to stop showing up to work

late.  *Id.* at 4.  Stanley claims that he could not comply with WMU's timeliness standards because of his disability, for which WMU did not provide a reasonable accommodation.  Katie DeCamp, the head supervisor of dining services at WMU, indicated that Stanley was told during training that he could use the speaker at the building's entrance to ask someone to open the door for him so that he would not be late, but Stanley claims he was never told about the speaker.  On November 10, Stanley claims he was informed that the hospitality department "doesn't do" accommodations, after which he contacted WMU's human resources department.  *Id.*  The following day, WMU terminated Stanley.

After receiving his notice of right to sue from the U.S. Department of Justice, Stanley filed suit.  He brought three claims: (1) discrimination under Title I of the ADA; (2) retaliation and intimidation under Title V of the ADA and under the PWDCRA; and (3) intentional infliction of emotional distress against all defendants, including unknown John Doe and Jane Doe employees of WMU, in their individual and professional capacities.  Stanley sought the following relief: "actual and compensatory damages"; punitive damages, attorney fees, and costs; "whatever other legal or equitable remedies [the district court] deems reasonable and just pursuant to statute and common law"; and "any other relief the [district court] deems fit."  *Id.* at 6.

WMU, DeCamp, and Warren Hills ("Defendants") moved to dismiss Stanley's complaint.  They sought to dismiss the ADA claims for lack of subject-matter jurisdiction on Eleventh Amendment immunity grounds, and the state-law claims for failure to comply with Michigan procedural law.  Stanley responded in opposition to Defendants' motion and sought leave to amend his complaint.

The district court dismissed all of Stanley's claims against Defendants with prejudice.  The district court also denied Stanley leave to file an amended complaint, finding that Stanley's proposed amendment would be futile.

## II.

As an initial matter, Defendants contend that we lack jurisdiction to adjudicate Stanley's appeal.  That is because, according to Defendants, when Stanley appealed, the district court had

not entered a final judgment. And when the district court did enter a final judgment, Stanley did not file a new or amended notice of appeal.

Before reaching the merits, we must ensure that we have appellate jurisdiction. *Watkins v. Healy*, 986 F.3d 648, 657 (6th Cir. 2021). Subject to exceptions not applicable here, Congress has granted us appellate jurisdiction "only from 'final decisions' of the district courts." *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985) (quoting 28 U.S.C. § 1291). A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). After entry of a final decision, a party must generally file a notice of appeal within 30 days. Fed. R. App. P. 4(a)(1). Filing a notice of appeal "after the court announces a decision or order—but before entry of the judgment or order—is treated as filed on the date of and after the entry." Fed. R. App. P. 4(a)(2); *see Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009).

On August 7, 2023, the district court dismissed all claims that Stanley brought against Defendants and denied Stanley leave to file an amended complaint. The district court also gave Stanley fourteen days to show cause why the John Doe and Jane Doe defendants should not be dismissed "for failure to timely identify and effect service on them." R. 19, PageID 235. Stanley did not respond to the show-cause order. Instead, on September 5, 2023, he filed a notice of appeal. On September 7, the district court dismissed Stanley's claims against John Doe and Jane Doe without prejudice and entered a final judgment.[1] Thus, Stanley filed a notice of appeal two days before the district court made its "final decision." *See* 28 U.S.C. § 1291.

Stanley's premature notice of appeal does not deprive us of jurisdiction. "A notice of appeal filed too early," as we explained recently, "ripens when the window to appeal begins." *Winters v. Taskila*, 88 F.4th 665, 671 (6th Cir. 2023); *see Preferred Props., Inc. v. Indian River Ests., Inc.*, 276 F.3d 790, 796 n.4 (6th Cir. 2002) ("[A] premature notice of appeal is effective to vest appellate jurisdiction when the judgment becomes final prior to the disposition of the appeal."). Stanley's notice of appeal ripened on September 7, 2023. We therefore have jurisdiction.

---

[1] Stanley does not appeal the dismissal of the claims against the unknown John Doe and Jane Doe employees of WMU.

Case 1:23-cv-00206-JMB-RSK  ECF No. 25,  PageID.249  Filed 06/24/24  Page 6 of 14 (6 of 14)

No. 23-1808                         *Stanley v. W. Mich. Univ.*                         Page 5

### III.

The district court dismissed Stanley's ADA claims against Defendants for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), finding Defendants were entitled to sovereign immunity. We review that decision de novo. *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 731 (6th Cir. 2022). In doing so, we "construe the complaint in the light most favorable to the Plaintiff[]; however, [we] need 'not presume the truth of factual allegations pertaining to our jurisdiction to hear the case.'" *Id.* at 731–32 (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015)).

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Eleventh Amendment bars actions "against states unless they consent to be sued or Congress, pursuant to a valid exercise of its power, unequivocally expresses its intent to abrogate sovereign immunity." *Ashford v. Univ. of Mich.*, 89 F.4th 960, 969 (6th Cir. 2024) (citations omitted). And that bar also applies to "state officers acting in their official capacity" and "entities acting on behalf of the state." *Id.* Although the text does not explicitly say so, Eleventh Amendment immunity precludes suits brought against a State by its own citizens. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).

The Eleventh Amendment affords broad protections for States against private suits. Unless immunity is removed, individuals cannot seek "monetary damages or retrospective relief." *Ashford*, 89 F.4th at 969. But they can "seek prospective injunctive relief against state officials in their official capacity before those officials violate the plaintiff's federal constitutional or statutory rights." *Skatemore*, 40 F.4th at 733; *see Ex parte Young*, 209 U.S. 123 (1908).

With this background in mind, we now address whether Defendants are entitled to immunity from Stanley's ADA claims.

Case 1:23-cv-00206-JMB-RSK   ECF No. 25, PageID.250   Filed 06/24/24   Page 7 of 14 (7 of 14)

No. 23-1808                          *Stanley v. W. Mich. Univ.*                          Page 6

### A.     Discrimination under Title I of the ADA

In Count I of his complaint, Stanley brought a claim under Title I of the ADA, which prohibits employers from discriminating against employees "on the basis of disability." 42 U.S.C. § 12112(a). He sought various forms of monetary damages and "whatever other legal or equitable remedies [the district court] deem[ed] reasonable and just pursuant to statute and common law." R. 1, PageID 6.

WMU is chartered under the Michigan Constitution. *See* Mich. Const. art. VIII, § 4; *W. Mich. Univ. Bd. of Control v. State*, 565 N.W.2d 828, 832 (Mich. 1997) (opining that "[s]tate universities are clearly a part of state government in Michigan" and that "Western Michigan University is 'the state'"). State universities in Michigan "are organically part of the state government." *W. Mich. Univ. Bd. of Control*, 565 N.W.2d at 832 (citing *Auditor Gen. v. Regents of the Univ.*, 47 N.W. 440, 441 (Mich. 1890)). Because WMU is an arm of the State of Michigan, a suit against WMU is a suit against Michigan. And the Supreme Court has held that an employee cannot maintain an action under Title I of the ADA against the State. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001).

Recognizing that *Garrett* bars his claim for money damages, Stanley tries to take advantage of the *Ex parte Young* exception to Eleventh Amendment immunity. But *Ex parte Young* does not allow suits "against the state itself." *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016) (citation omitted). Thus, *Ex parte Young* does not apply to Stanley's ADA discrimination claim against WMU.

But what about his ADA discrimination claims against DeCamp and Hills? Those must also fail. To the extent Stanley seeks damages against DeCamp and Hills in their official capacities, they enjoy Eleventh Amendment immunity. *See Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017) ("[Eleventh Amendment immunity] protects states, as well as state officials sued in their official capacity for money damages, from suit in federal court."). And to the extent he seeks damages against them in their personal capacities, they are not subject to liability under the ADA. *See Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999) (personal-capacity defendants are not "employers" under Title VII of the Civil Rights Act of 1964); *Wathen v. Gen. Elec. Co.*,

Case 1:23-cv-00206-JMB-RSK   ECF No. 25,  PageID.251   Filed 06/24/24   Page 8 of 14 (8 of 14)

No. 23-1808                         *Stanley v. W. Mich. Univ.*                         Page 7

115 F.3d 400, 404–405 & n.6 (6th Cir. 1997) (noting Title VII and the ADA are "essentially the same" with respect to "an employee/supervisor's individual liability").

Stanley also fails to allege the necessary facts that show that his requested relief—an injunction barring all Defendants, including DeCamp and Hills, from firing him—will redress his injury. Nowhere does his complaint specify that DeCamp and Hills fired him or can reinstate him. Therefore, he lacks standing to pursue injunctive relief against DeCamp and Hills.

### B. Retaliation under Title V of the ADA

In Count II of his complaint, Stanley alleges that WMU retaliated against him in violation of Title V of the ADA. Specifically, Stanley contends that "WMU retaliated against [him] by firing him for simply exercising his rights under the ADA . . . when making reasonable request [sic] for an accommodation based in alternative method [sic] for clocking in and for the use of his service animal." R. 1, PageID 6. Title V prohibits employers from retaliating against employees for "oppos[ing] any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203(a).

Neither the Supreme Court nor this court has addressed previously whether the States are entitled to immunity from claims brought under Title V of the ADA. *See Cook v. Garner*, No. 19-5931, 2020 WL 4876309, at *3 (6th Cir. June 17, 2020) (order). To determine whether WMU is entitled to Eleventh Amendment immunity from Stanley's Title V ADA claim, we must decide: (1) "whether Congress unequivocally expressed its intent to abrogate that immunity" and, if so, (2) "whether Congress acted pursuant to a valid grant of constitutional authority." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000).

Congress clearly expressed its intention to abrogate Eleventh Amendment immunity in the ADA. It stated that "[a] State shall not be immune under the eleventh amendment to the Constitution . . . from an action in Federal or State court of competent jurisdiction for a violation of [the ADA]." 42 U.S.C. § 12202.

So we consider whether Congress had constitutional authority to remove the States' immunity for claims brought under Title V. Congress cannot rely on "the powers enumerated in

Case 1:23-cv-00206-JMB-RSK   ECF No. 25,  PageID.252   Filed 06/24/24   Page 9 of 14 (9 of 14)

No. 23-1808                     *Stanley v. W. Mich. Univ.*                     Page 8

Article I" of the Constitution to remove Eleventh Amendment immunity. *Garrett*, 531 U.S. at 364. It can apply the ADA to the States only "pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Lane*, 541 U.S. at 518 (citation omitted); *Garrett*, 531 U.S. at 364; *see also* 42 U.S.C. § 12101(b)(4). Section 5 grants Congress authority "to pass appropriate legislation to enforce the Fourteenth Amendment." *Trump v. Anderson*, 601 U.S. 100, 109–10 (2024) (per curiam) (internal quotation marks omitted). This power to enforce the Fourteenth Amendment "includes the authority both to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Kimel*, 528 U.S. at 81.

We must first identify "the scope of the constitutional right at issue." *Garrett*, 531 U.S. at 365. That constitutional right comes from § 1 of the Fourteenth Amendment, which protects individuals' equal-protection and due-process rights from encroachment by the States. The Supreme Court has held previously that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Id.* at 367. Title V's prohibition against retaliation protects related but nonetheless distinct interests than Title I. *Cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) ("The substantive provision [of the related and substantively identical Title VII] seeks to prevent injury to individuals based on who they are, i.e., their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct."). But, as in this case, Title V claims are frequently predicated on Title I claims, such as when a plaintiff alleges retaliation for complaining about the very disability discrimination he experienced. It logically follows that if states have no affirmative duty, beyond rationality, to accommodate a disabled citizen in that instance, then the right against retaliation for opposition to such discrimination is similarly narrow.

Next, we must consider "whether Congress identified a history and pattern of unconstitutional" retaliation in the employment context "by the States against the disabled." *Garrett*, 531 U.S. at 368. Congress's legislative findings do not reveal a history of the States retaliating against their employees for opposing disability discrimination. *See* 42 U.S.C. § 12101(a). And the House and Senate Committee Reports on the ADA "made no mention of

Case 1:23-cv-00206-JMB-RSK ECF No. 25, PageID.253 Filed 06/24/24 Page 10 of 14 (10 of 14)

No. 23-1808 *Stanley v. W. Mich. Univ.* Page 9

discrimination in public employment." *Lane*, 541 U.S. at 522 (citation omitted). Not surprisingly, the committee reports do not discuss employment retaliation based on opposing disability discrimination in the public sector. *See* H.R. Rep. No. 101-485 (1990); S. Rep. No. 101-116 (1989).

Because Congress's legislative findings and the congressional record do not reflect a history and pattern of retaliation by the States against public employees for opposing disability discrimination, we hold that Congress did not have authority under § 5 of the Fourteenth Amendment to remove States' Eleventh Amendment immunity for ADA retaliation claims predicated on a violation of Title I of the ADA. Our holding flows naturally from *Garrett*: if Congress did not validly abrogate Eleventh Amendment immunity for Title I claims, then it also did not abrogate Eleventh Amendment immunity for a claim under Title V alleging retaliation for a Title I claim. *See Dupree v. Owens*, 92 F.4th 999, 1007 (11th Cir. 2024) ("Title V cannot serve as a congruent and proportional remedy when paired with a Title I claim. . . . [W]hen the underlying provision—here, Title I—does not allow a plaintiff to assert a claim against the State, it logically follows that a Title V claim that is based on the exercise of a right arising only from Title I cannot be levied against the State."). In reaching our holding today, we join every circuit to have addressed this issue. *See id.*; *Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613, 619 (5th Cir. 2020); *Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001).

The *Ex parte Young* exception does not help Stanley for his retaliation claim any more than for his discrimination claim. He cannot obtain an injunction against WMU because WMU functions as the State. *See Puckett*, 833 F.3d at 598. And, as stated above, his request for injunctive relief from the individual Defendants was deficient.

\* \* \*

The district court lacked subject-matter jurisdiction to adjudicate Stanley's ADA claims because Defendants are entitled to Eleventh Amendment immunity, and Stanley lacks standing to request injunctive relief from DeCamp and Hills. Because the dismissal was for lack of subject-matter jurisdiction, the district court should have dismissed Stanley's ADA claims without prejudice. *See Taylor v. Owens*, 990 F.3d 493, 496 (6th Cir. 2021).

### IV.

Stanley brought state-law PWDCRA and intentional-infliction-of-emotional-distress claims against Defendants. The district court could resolve those claims only through supplemental jurisdiction because there was no basis for original jurisdiction. *See* 28 U.S.C. § 1367(a). District courts do not have to exercise supplemental jurisdiction, and they may decline to do so if, as relevant here, "the district court has dismissed all claims over which it has original jurisdiction[.]" *Id.* § 1367(c)(3). Thus, a district court has discretion in deciding whether to exercise supplemental jurisdiction. "That discretion, however, is bounded by constitutional and prudential limits on the use of federal judicial power." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996), *as amended*, 1998 WL 117980 (6th Cir. Jan. 15, 1998) (order).

Not all pretrial dismissals are created equal. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims[.]" *Id.* at 1254–55 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). But when federal claims are dismissed under Federal Rule of Civil Procedure 12(b)(1), "supplemental jurisdiction can *never* exist" because a Rule 12(b)(1) dismissal indicates "that there never was a valid federal claim." *Id.* at 1255. That is the case here. The district court did not have jurisdiction to decide Stanley's state-law claims because "the district court lacked subject matter jurisdiction over any federal issues." *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 160 (6th Cir. 1992); *see also Musson*, 89 F.3d at 1256 ("[W]hen a federal claim is dismissed as insubstantial, the Constitution absolutely forbids a district court from exercising supplemental jurisdiction over any remaining state claim."); *Whittington v. Milby*, 928 F.2d 188, 194 (6th Cir. 1991) (per curiam) (holding that state law claims "should have been dismissed without prejudice once plaintiff's federal jurisdictional claim was held to be inappropriate." (internal quotation marks omitted)); *Dakota, Minn. & E. R.R. Corp v. Schieffer*, 715 F.3d 712, 713 (8th Cir. 2013) (opining that "courts have uniformly held that" supplemental jurisdiction is unavailable "when original federal jurisdiction is wholly lacking"). Therefore, we remand to the district court with instructions to dismiss those claims without prejudice. *See Whittington*, 928 F.2d at 194; 28 U.S.C. § 2106.

## V.

Finally, we address the district court's denial of Stanley's motion to amend his complaint. We generally review the district court's decision to deny a motion to amend a complaint for an abuse of discretion. *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 407 (6th Cir. 2016). But because the district court's denial rests on the conclusion that amendment would be futile, we review the decision de novo. *Id.*

Under Federal Rule of Civil Procedure 15, a party may amend his pleading with the court's approval, which shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). There are circumstances, however, where justice counsels against amendment, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile "when, after including the proposed changes, the complaint still could not withstand a Rule 12(b)(6) motion to dismiss." *Skatemore*, 40 F.4th at 737–38 (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts construe the complaint in the light most favorable to the plaintiff and accept the complaint's well-pleaded factual allegations as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014).

Stanley's proposed amended complaint included eight additional paragraphs, and he requested to amend the relief sought to include an order that would enjoin Defendants from firing him and that would reinstate him to his position at WMU. Specifically, Stanley argues that his proposed amended complaint "would have provided clarification and additional factual allegations to further support his claim for *Ex parte Young* relief, cure other minor deficiencies in

the pleading, and would have ensured [he] withstood a 12(b)(6) motion to dismiss." D. 14 at p.28.

The district court did not err in denying Stanley's motion. First, none of the newly added paragraphs include facts that would support a claim under *Ex parte Young*. The only one that comes remotely close is Paragraph 3 of the proposed amended complaint where Stanley claims "[d]uring all relevant times, Defendants Warren Hills, Katie DeCamp, and Unknown John Doe and Jane Doe employees of WMU acted as agents of WMU, and upon information and belief, maintained 15 or more employees each working day." R. 17-2, PageID 200. Stanley added this allegation so that the district court would consider Hills and DeCamp "employers," which could trigger personal liability under the ADA. But it states a legal conclusion that the district court did not have to accept as true. *See Iqbal*, 556 U.S. 662, 678. Second, his proposed amended complaint does not indicate that DeCamp or Hills have the power to reinstate him. Although Stanley claims DeCamp and Hills "presumably had the power to reinstate" by virtue of their positions at WMU, D. 14 at p.32, we are not required to presume as much.

## VI.

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Stanley's ADA claims and the denial of Stanley's motion for leave to amend his complaint. We **VACATE** the district court's judgment dismissing Stanley's federal and state-law claims with prejudice and **REMAND** this case to the district court with instructions to dismiss Stanley's federal and state-law claims without prejudice.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-1808

BENJAMIN STANLEY,

    Plaintiff - Appellant,

v.

WESTERN MICHIGAN UNIVERSITY; WARREN HILLS and KATIE DECAMP, individually and in their professional capacities,

    Defendants - Appellees.

**FILED**
Jun 24, 2024
KELLY L. STEPHENS, Clerk

Before: CLAY, THAPAR, and MATHIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's dismissal of Benjamin Stanley's ADA claims and its denial of his motion for leave to amend his complaint are AFFIRMED.  However, the September 7, 2023 order of dismissal is VACATED insofar as it dismisses Stanley's federal and state-law claims with prejudice, and the matter is REMANDED to the district court with instructions to enter an order of dismissal of the same claims without prejudice, consistent with the instructions and opinion of this court.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk